Thank you, Your Honor. Good afternoon. May I please the court? My name is Tim Hennessy representing Big Sandy Rancheria Enterprises. I'd like to reserve three minutes for my rebuttal. So there's several subjects we want to cover today. So I thought it would be useful to first set out a roadmap of where I plan to go. First. We'll look at the state cigarette excise tax issues and see that Big Sandy doesn't engage in a single taxable transaction because Big Sandy has a reservation and it sells them to Indian tribes and tribal members on their reservations. And Supreme Court has repeatedly held that none of these transactions are taxable. And next we'll look at whether certain state regulations apply to Big Sandy's transactions and show that the state doesn't have the authority to regulate Big Sandy as an Indian trader partly because Big Sandy's transactions aren't taxed by the state and partly because even if the of the goods purchased by reservation Indians and because they aren't read the regulations aren't reasonably tailored to help collect any valid tax. And then finally we'll look at the jurisdictional issue and show that Big Sandy's exempt from the Tax Injunction Act because it's an Indian tribe chartered under section 17 of the Indian Reorganization Act. So the first subject is cigarette tax preemption and tax preemption is not just because it's a claim in this case and Big Sandy needs to know what it has to do to comply with state and federal law but also because the state's authority to tax unlocks its authority to regulate in these circumstances. So the authority to tax is key under federal law because the Supreme Court in Milhelm allowed states to regulate Indian traders and that's what Big Sandy is only where the state regulation is reasonably tailored to assist with the collection of valid taxes from non-Indians. So the question of whether there are any valid taxes connected with the person being regulated is a key part of judging whether the state regulations are preempted. And then under state law taxability is key to the directory statute in particular which according to the Attorney General doesn't apply to tax exempt cigarettes. So it's important to see if any cigarettes Big Sandy deals with are taxable and the basic preemption rules that we're dealing with here are these two rules. First tax is preempted by a per se rule that categorically bars taxes imposed on tribes and tribal members on their reservations. And second the Indian trader statutes preempt any tax imposed on Indian traders for trading with Indians on the reservation. And you can look at the Chemehuevi case the the US Supreme Court decision in Chemehuevi to see how California imposes taxes in light of these preemption rules. And what Chemehuevi shows is that for cigarettes sold in Indian country state tax isn't imposed on anyone except the consumer and then only if the consumer is taxable. Only the retailer is required to collect and remit any tax that's imposed on the consumer. There's no pre-collection before the final retail sale. So what Chemehuevi demonstrates to us is that the state system allows the product to reach tax exempt consumers on the reservation without having been taxed already and generally without having been blocked for breaching the reservation altogether. In other words in the kind of tax system that California has as Colville put it cigarettes in transit to a reservation are as yet exempt from state taxation. And for Big Sandy what the system means is that under state law within the limits of the state's authority in Indian country wholesale distributors like Big Sandy are able to distribute products for the reservation without incurring any tax obligation, which is all shifted to the retailer and the consumer. So that's the basics of our tax claim. I confess to be really confused by this case, but insofar as I understand it somewhere at the core of it is the fact that the understanding that non-members of the tribe are treated as non-Indians for purposes of these statutes. Is that wrong? That non-members, I mean, that's a true statement in general. That's what Colville held. I don't think it's central to this case though. Well, why isn't it then? Because the retailers as I understand it are the non-members of the Big Sandy reservation. No, so you're right about that fact. Big Sandy operates on its reservation and it's obviously it's that tribe. It's its own reservation. When it leaves the reservation, it's still tax-exempt not because of its status as an Indian tribe, but because of its status as an Indian trader. An Indian trader is anybody whether Indian or non-Indian who make sales to Indians or Indian tribes on their own reservations, right? So Big Sandy sells its product to Indian tribes and tribal member-owned entities on the reservations of those tribes and those tribal members and that makes it an Indian trader. And that's what exempts Big Sandy from any tax on those sales. There's also a rule that exempts those buyers from tax when they purchase those cigarettes and that's the per se rule that says that states can't tax Indians and Indian tribes and tribal members when they're on those reservations. So from both sides, the buyer and the seller, those transactions, Big Sandy's sale of cigarettes to the people it sells to is exempt from California tax. And Big Sandy itself is also exempt on those sales because it's an Indian trader. So we'll look at the directory statute now with those tax ideas in mind. Well first, clarify for me whether or not you're federally sanctioned as an Indian trader or any of your entities. No, Big Sandy doesn't have a federal Indian trader license. And of what significance is that to your argument? It's irrelevant. The Supreme Court in the Central Machinery case said that the fact that a person who's an Indian trader does or doesn't have a federal Indian trader license is irrelevant. I'm quoting them. Flat-out irrelevant. I'll point you to a recent decision that addresses this issue. This is just a case from about a month ago. It's Flandreau-Santee Sioux Tribe v. Terwilliger. I just have the Westlaw site. It's 2020 WL6158920. It's from the District of South Dakota from October 21st. That was a case where the court held that a state tax was preempted by the And the fact is, the BIA, which is the entity that's supposed to issue this trader license, they haven't done it for decades. Big Sandy contacted them and said, what do we have to do to get an Indian trader license? They said, we don't even have any forms for that. And yet, the statutes are still on the books. This is what the Central Machinery case says. As long as those statutes are on the books, they have preemptive force, just as much as they ever did. You're under seven minutes, so if you want to turn to other issues, you should. I better pick it up. I better pick it up. So the directory statute, we're calling that the complementary statute also. It's the directory statute that prohibits the sale and possession of cigarettes that aren't listed on the state's directory of approved brands. It's meant to enforce manufacturer's compliance with MSA and escrow fees. The rule in California, according to the Attorney General in his briefs, is that cigarettes the state cannot tax are excluded from the escrow and directory statutes. So if Big Sandy handles only untaxed cigarettes, then it's handling only cigarettes that aren't subject to the directory statute. None of our cigarettes act while they're in Big Sandy's possession. Therefore, they don't have to be on the state's directory. And what that means is that it's the retailer's responsibility to make sure that they stock some tax-stamped, directory-listed cigarettes if they want to make that kind of sale. But Big Sandy is strictly in the business of supplying the other kind of cigarettes for people who are allowed under federal law to buy them. You're operating outside the reservation, and aren't you still subject to discriminatory acts? No, because of the Indian trader statutes. The Indian trader statutes are an act of Congress that stand as an exception to that general rule. You can see that in Mill Helm, where all these cigarette wholesalers were operating off reservations, and yet the Supreme Court still held the state laws that applied to them, made sure that those state laws had to comply with the strictures of the Indian trader statutes, subject to those federal limitations. Well, what did the district court say with respect to this point? I believe what the district court said, they treated Big Sandy as if it were just an Indian operating off the reservation without respect to the Indian trader statutes. I don't think it addressed this idea from Mill Helm that an Indian trader, even when it's off the reservation, is still protected by this preemptive federal law. Well, is the district court because they're going to other reservations? Is the reason why it's preempted because once they get onto the reservation of another tribe, then they become the Indian trader and the other tribe becomes the relevant tribe? Is that what you're saying? Whereas if they were doing the same thing and going and selling off any reservation, your argument wouldn't fly under the Indian trader statutes? Is that what you're saying? That sounds right to me. I confess I didn't hear completely what you were saying, but yes, it's the fact that they're making sales to Indians on their own reservations that makes them an Indian trader. And during the course of making that sale, state law is preempted under the Indian trader statutes, subject to the one exception that Mill Helm found. If they were just selling anywhere, we wouldn't be here. We wouldn't be here today. I better turn to the jurisdiction issue because just to say one quick thing about it, and that's, I guess, that a tribe like Big Sandy that reorganizes under a section 17 charter is a tribe that can bring a civil action under section 1362. And along with that comes the exception. Obviously, the big elephant in the room is why didn't the tribe come into this case and try to remit the sale question? I'm sure it fell off the record, but I would be at least vaguely curious. My answer to that is that the tribe did come into this case. The tribe organized in a corporate form. The whole fight is between the section 17 entity and the tribe, the non-incorporated tribe. And everybody agrees that it's a non-incorporated tribe that brought the case or come into the case when the issue was raised. Well, so, I mean, it's the same. The board of directors of the section 17 tribe is the same as the tribal council of the unincorporated tribe. Section 17 doesn't require that, right? It doesn't require it, no. So you're kind of in, you know, as if this was a wholly owned subsidiary or something, but it's not. It is, but it doesn't have to be. A section 17 corporation, I think I can answer it this way. Section 17 corporation is the only corporation in the world that is formed under a federal law designed to reorganize Indian tribes. The section 17 corporation is a structure. It's designed to reorganize it in order to allow them to conduct business as a corporation. That's right. Presumably to avoid individual liability and so on. Well, I guess to avoid liability for the tribe, I mean, I think the answer to my question is, well, the tribe doesn't want to come in because then they have different liability if they admit that they're the same as the section 17 entity. I mean, I suppose that's right. I mean, part of my answer to that is, no, the tribal government isn't the same as the section 17 tribe, but neither of them is separate from the tribe. So the tribe, it's like the tribe has these two faces. It has two structures, two forms. Section 17 corporation is a face of the tribe. The tribe in its governmental capacity is another face of the tribe. Both of them are the tribe. Well, this entity has been created in order to avoid some of the characteristics of tribes to enable it to engage in commercial activities. Isn't that true? That was the purpose of it, to keep it separate from. Yeah, yeah. So that the tribe could engage in commercial activities through this other structure. Right. And the point is, it's the tribe that's doing that. Well, yes, but the district court concluded that this entity is dealing in off-reservation activities and that they're therefore subject to nondiscriminatory state laws that are applicable to everybody. Now, why is that wrong? I'm sorry. In the context of Big Sandy being a Section 17 corporation? Yeah. Well, Mescalero held that for purposes of immunity from state taxes, it doesn't matter what form the tribe operates in. It's governmental capacity or a Section 17 corporation. That's a Mescalero decision. Okay. Well, your time's expired, but I'll give you some time for rebuttal. Okay, thank you, Your Honor. All right, Mr. Hart? Good afternoon, James Hart on behalf of Appellee Javier Becerra. I'll be addressing the 1286 claims. I'm not hearing. No? You can't hear him? Didn't anyone else hear me? I can hear you. Okay. Why don't we stop the clock for the moment and see if we can get Judge Schroeder back on? Can you hear me, Mary? I guess I should talk so that we can see if she can hear me again. I can hear everyone. I was talking about Judge Schroeder. She looks frozen now, too, so that might be. Yeah. Scarlett, do you want to contact Judge Schroeder and see if she wants to leave and rejoin? I don't know if that will correct the situation. Yes, I will. Thank you. Judge Schroeder, can you hear me now? Yes. I think I'm back. All right. All right, Mr. Hart. You may proceed with your little hiatus. All right. Sure. Well, I'll be addressing the 12B6 claims. Co-counsel will address the 12B1 and Tax Injunction Act claims. I'll look to hand off to him in about five minutes. Okay. May it please the Court. The SRE is engaged in the distribution of tens of millions of unstamped, untaxed, off-directory cigarettes. It delivers those cigarettes up and down the state, transports those cigarettes along state highways. Such transactions are properly characterized as off-reservation. As a result, Mescalero supplies the relevant rule. Under Mescalero, the question is whether or not the state law is a nondiscriminatory law of general application. Given the state laws here, state law applies. District Court characterized BSRE's complaint as a mere attempt to retread old ground. The District Court is correct. Indeed, to the extent BSRE's claims are distinguishable from prior cases, BSRE's claims are weaker than claims that have come before. According to the complaint, BSRE is engaged exclusively in sales off of its reservation. BSRE makes no sales to members of its resident tribe. And— My understanding is, I understand with regard to the sovereignty issues, but with regard to the Indian trader statutes, the argument seems to be that the Big Sandy is an Indian trader when it shows up on the other reservations, which is where it's selling its product. And that, therefore, that transaction is subject to the Indian trader rules because it is then a non-Indian for purposes of that transaction. And from the point of view of the tribe to which it's selling, an Indian trader. So what about that? Well, so let's accept that predicate, that they are an Indian trader when they've reached the purchasing tribe's reservation. Then you've just got what is effectively a bad version of Milhelm. You have an Indian trader selling on a reservation. The question of Milhelm— I'm just not going to say anything. You'd like to pause? Yeah. Could you please— I can't see anybody making remarks right now. Oh, okay. I got this up. Thank you. Sorry. Sorry. Go ahead. It's all right. So you've got— In that situation, you're looking at a weak version of Milhelm. In Milhelm, the court is looking at an Indian trader selling to an on-reservation tribe. And the question, as the question is here, is whether or not the state has the power to regulate that transaction. The court says, yes, it's allowed to regulate the tribal wholesaler because of the state's interest in the underlying transaction, that the relationship between the on-reservation seller and its eventual customer is sufficiently strong that the state can regulate up and down the distribution chain, including at the wholesale level. So—and that's specifically addressing the question of, you've got a federally licensed Indian trader selling to a tribe. Here, you've got a much weaker case because while Mr. Hennessey refers to them as an Indian trader, this is not a federally licensed Indian trader. They don't have any permanent relationship with the reservations that they're selling on. And I think it goes to the question of, like, how narrow it is, the premise on which BSRE's claim is based. Because effectively, what we're seeing here is BSRE is operating on the Aubury Reservation. The conduct that is occurring on the receiving reservation is that when BSRE makes the sale, loads it onto a truck, instead of writing FOB origin, it writes FOB destination. And according to Big Sandy, that becomes an on-reservation sale on the distant reservation and that it's somehow able to move those cigarettes all the way there without being subject to state laws at all, which is the other piece of your question that I want to speak to, which is, we've got a whole slew of cases that speak to the state's power to regulate these transactions while they're on the state highways. Colville, if you read Colville, it's a federally licensed Indian trader selling onto the reservation, and the state is seizing trucks as they head between the Indian trader to the reservation. And the question is, does the state have this power? Can it regulate this transaction? On the actual fact, well, I mean, I guess the problem here is we don't have actual facts. We have an anticipatory student, which is not very specific, but the transportation itself is not central to anything here. I mean, they're not. I mean, maybe you could seize them on the highway, but that's not what they're complaining about. You haven't seized them on the highway. The complaint is taxing and otherwise regulating the sales on the distant reservation. Right, and the state's position, because this is a motion to dismiss, is the question of what happens when the cigarettes arrive on that distant reservation. We think we win under Mill Helm or Colville or Muskogee Creek, which is almost exactly the same case decided in the same procedural posture. But we also say that the question that they're asking is far too narrow. The question of whether or not the state loses or should be enjoined from being able to enforce its laws, looking only on the receiving, purchasing tribes reservation, naturally and unnecessarily limits the state's power, that the state's seizure power is extremely strong when the cigarettes aren't anywhere, aren't in Indian country, aren't in BSRE's Indian country, aren't in the receiving, purchasing tribes Indian country. When they're just on the highways, you've got a very low tribal interest and a very high state interest. We don't have a sale yet. That's the problem. What's that? We don't have anything to attach the excise tax to at that point. Well, whether or not BSRE is exempt from tax, like the state doesn't take a position on the taxability of any of BSRE's sales. We agree that under Chickasaw, a state can't tax cigarettes sold on Indian reservation to tribes or tribal members for their use. And we say that under the state scheme, a licensed distributor would be able to complete the transaction that Big Sandy is describing to a on-reservation Indian in an exempted transaction. But the state's argument is we have regulatory power over this transaction. The fact that if they were a licensed distributor and they were selling within the lawful chain, that they would then be able to distribute these cigarettes in an exempted transaction, tells us nothing about whether or not Big Sandy owes a tax on the transaction. It's not a licensed distributor. It's not sourcing its cigarettes from a licensed manufacturer. It's not selling to licensed individuals. So whether or not Big Sandy owes the tax, the manufacturer owes the tax, the tax is owed on the Big Sandy reservation, requires particular facts as to that transaction. The state's main request is you need to be licensed, you need to be participating in the lawful chain, so that we can see who you are, see who you're selling to, see what those sales look like, and then, only if the sales are taxable, to collect the tax. So let me also briefly speak to the statement that the state doesn't enforce the Complementary Act if the cigarettes are exempt. That is incorrect. The Complementary Act attaches based on a promise made by the manufacturer. If the manufacturer agrees that whatever I owe in escrow, I will pay the state. That's the promise that is provided to the state. If that manufacturer can't make even that promise, then the cigarettes are contraband for sale to anyone, not just to Indian traders. There is no licensed distributor who can distribute those cigarettes in the chain. Just like if someone has a ship full of black market cigarettes that it wants to sell, it's not able to bring those into the California market. And the purpose of the Complementary Statute is to extract the escrow fees when they're due. Just like the state regulatory scheme is built around collecting excise tax when it's owed, the Complementary Act says, you pay us when the money is actually owed to us. So it's not that the Complementary Act doesn't attach. It has attached to all of these cigarettes. Any of the shipments that BSRE is shipping, trucking across the state, all of those are subject to seizure under Revenue Code 30436. Thank you. All right. You may proceed. Good afternoon, Your Honors. Michael von Lohenfeldt for Director Medeiros. I'm going to briefly touch on the Tax Injunction Act in 1362 issue. The tribe here is the Big Sandy Rancheria brand of Mono-Indians. It's not BSRE. And it's very interesting that in this argument they stop calling themselves BSRE and start using the term Big Sandy. The 1362 jurisdictional option only exists for tribal governments. And we see that in a number of places. We see that in the legislative history of 1362, which focused on the unique governmental status of Indian tribes. We see that in the definition of recognition, which is a formal political act establishing government-to-government relations. We see that in the United Kituwa case that the other side relies on, where you actually read the case at page 1174. The court is very clear that the entity in question, even though it's incorporated, is the government of the tribe. The court says there is no indication in the pleadings or briefs that the tribe comes before the federal court in any manner other than as the sovereign entity. And they note that the corporation in United Kituwa is listed in the federal regulations as a recognized tribe. The analogous entity here is not BSRE. It's the Big Sandy Rancheria, the actual tribe, qua tribe, or the governmental tribe. And this court in the Navajo Tribal Utility case noted specifically that the notion of a tribe, quoting the Supreme Court in Montoya, is a group under one leadership or government. And that if the leadership of the tribe, the government of the tribe, wants to come to federal court, 1362 allows them to do so in the same way that the federal government itself could. No case recognizes the type of special status being argued by BSRE so that that tribe would have not only one but two entities, each of which can come into federal court, but even though the Secretary of the Interior has not duly recognized BSRE's government or as its governing body, as a governing entity, it's not a governing entity. BSRE is a commercial entity. Well, the statute calls it the incorporated tribe, doesn't it? Well, Your Honor, I think if you read the statute, what's going on in 1934 is they're using, they say that a tribe can ask for a charter of incorporation, and then the charter will be given to such tribe, and then the third time they say it, they use the term incorporated tribe instead of tribal corporation. So there's a little bit of inversion so that they don't keep repeating the same thing. There's no suggestion in the legislative history or in any case law since that that language was meant to treat the corporate tribe as some type of governmental body. In fact, quite the opposite. It's very clear in everything before the court that the purpose of Section 17, as Your Honor noted, is to allow the tribe to create a normal business corporation to take advantage of the same corporate structures that other entities can take advantage of. And what does that mean? That means separation from the governing tribe. That means limits of liability. That means a separate juridical person. A corporation is its own entity. It's not the same as the other entity. And the basic reason why is that Indian tribes could not get credit at the time. Did you hear case law with regard to bringing lawsuits against these entities and whether they can assert sovereign immunity? I didn't find any, and none has been cited by BSRE specifically on that point. I would note that jurisdiction is their burden to establish, and to the extent there's any uncertainty, they lose. Jurisdiction needs to be clear. But I think the purpose of the entity, Your Honor, is to engage in normal business transactions. It would be poor implication of your argument that they could not assert sovereign immunity. I think to the extent they engaged in transactions that would— I guess if I was going to say it more specifically, I'd say this. They're allowed to waive immunity separately from the tribal government waiving immunity. So they— They assert it at all rather than waiving it. I mean— I think that's— I know from other lawsuits that more discreet entities owned by Indian tribes that are not Section 17 entities, the tribe as incorporated, cannot assert sovereign immunity. That's my understanding. But what about this entity? I think that logically follows, Your Honor, but I don't— I'm not aware of a specific case addressing that point. Frankly, there are very few cases even discussing Section 17 at all. But what is clear, I think, is the cases discussing Section 1362 make it clear that it's the governmental entity that has the jurisdiction— essentially borrows the same jurisdictional status as the United States. BCRE is not a government. It has no government-to-government relationship with the United States. It's not— It is a tribal corporation just like the corporation at issue in Navajo Tribal Utility. Its tax status as in Navajo Tribal Utility is irrelevant to the jurisdictional question. So— And I would note— They cite to Mescalero. I would note that Mescalero came up through the state court, through the normal proper procedure in state court for challenging taxes, and then on certiorari to the United States Supreme Court. It's not a 1362 case at all. So, Your Honors, we'd ask you to please affirm the Supreme Court's ruling. Thank you. Thank you, Counsel. We'll put on your three minutes you requested for rebuttal. Thank you, Your Honor. Well, I guess first I want to say yes, a Section 17 corporation absolutely can assert sovereign immunity. Is there any case which has successfully done so? I'm not sure. I can't name a case offhand. And I won't ask you to just trust me, but I'm fairly sure that we cited a case like that in our brief. It might be the Lenine case. And I know to the extent that there are cases that say— Well, I guess just like Mr. von Lohenfeld said, allowing the Section 17 corporation to be separate from the tribal government so that they could each separately waive their sovereign immunity, I mean, that inherently requires the— it tells you that the Section 17 corporation itself has some immunity to waive. Well, if they waive it, that makes it easy, but it doesn't solve the question of whether they have immunity. So then the other point I want to make here is that the state said in its district court brief—you can find this in the record at page 83— that the statute and the complementary statute both make clear that tax-exempt transactions are beyond the intended reach of both statutes. I'm paraphrasing there because they use different— they call the statutes by different names there, but that is what they're saying, and they need to be bound to that position at this point, having taken that position in the lower court and using it to convince the court to dismiss our complaint. And then the other point I want to make is that state law is essential here, and it's the difference in state law that— it's the key difference that differentiates this case from something like Milhelm or Muskogee. And for an illustration of that, you can look at the Cayuga Indian Nation versus Gould case, where that was in New York, and a few years after Milhelm, New York abolished the regulation that was approved in Milhelm for whatever reason, and local officials tried to enforce cigarette sale regulations against wholesalers as if the law had stayed the same in New York. And the New York court said, no, because the law is different, because those specialized restrictions, specialized regulations that were approved in Milhelm are no longer in place, your attempt to enforce regulations against this wholesaler are now preempted by federal law because of the difference in state law. And California now is in the position that New York was for a brief time in the Gould case. There is no connection between a wholesaler like Big Sandy and the transaction that might ultimately be taxable. And it's that lack of a direct connection that means that a regulation on a wholesaler like Big Sandy can't be, it's impossible to tailor that to satisfy the Milhelm standard. Thank you, counsel. Thank you. Thank you all for your arguments and your briefing. It's been very helpful to the court. And the case just argued will be submitted for decision, and we will be in recess for five minutes.
judges: Schroeder, Thomas, Berzon